IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Jamal M. Watson, | ) Case No. 8:14-cv-04653-JMC-JDA |
|     Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| Director Nadia Pressley, Captain Jackie Scott, Lt. Jerald Irving, Lt. Nick Murray, | ) |
|     Defendants. | ) |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 25.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

This action was filed on or before December 8, 2014,[1] alleging violations of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983, the Religious Freedom Restoration Act ("RFRA"), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[2] [Doc.

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, the record does not include the date the Complaint was delivered to prison authorities, and Plaintiff failed to sign and date his Complaint. Accordingly, construing the filing date in the light most favorable to Plaintiff, this action was filed on or before December 8, 2014. [Doc. 1 (Complaint, stamped as received by the Clerk on December 8, 2014).]

[2] Plaintiff references both RFRA and RLUIPA in a letter attached to his Complaint. [Doc. 1-1 at 1.] RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . ." 42 U.S.C. § 2000cc–1(a). RLUIPA applies only to suits against states and does not create a cause of action against federal agencies or agents. *Madison v. Riter*, 355 F.3d 310, 315 (4th Cir. 2003). RFRA is similar to RLUIPA and initially applied to both the states and the federal government, but the Supreme Court concluded in *City of Boerne v. Flores*, 521 U.S.

1.] Defendants filed a motion for summary judgment on April 30, 2015. [Doc. 25.] On May 4, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised to respond to the motion and of the possible consequences if he failed to adequately respond. [Doc. 26.] Plaintiff filed a response in opposition to the motion on May 13, 2015 [Doc. 28] and an additional attachment on May 18, 2015 [Doc. 30]. Accordingly, the motion is ripe for review.

## **BACKGROUND**[3]

Plaintiff, who was a pretrial detainee at the Williamsburg County Detention Center ("WCDC") at all times relevant to the allegations in the Complaint,[4] alleges that Muslims housed at WCDC are denied the right to congregate on Fridays for Jumu'ah, two prayers and a short sermon, but Christians are allowed to congregate with an outside preacher on Sundays and have fellowship on Mondays. [Doc. 1 at 3 ¶ 1.] Further, Plaintiff was stripped

---

507 (1997), that RFRA exceeded Congress's remedial powers over the states under section 5 of the Fourteenth Amendment. *See id.* at 532–36. Congress "sought to avoid *Boerne*'s constitutional barrier by relying on its Spending and Commerce powers" in subsequently enacting RLUIPA. *Madison*, 355 F.3d at 315. Thus, Congress has created a parallel statutory scheme, using virtually identical language, in which "RFRA continue[s] to apply to the federal government" and RLUIPA "mirror[s] the provisions of RFRA" in suits against the states concerning institutionalized persons. *Id.* Because of the close connection in purpose and language between the two statutes, courts commonly apply "case law decided under RFRA to issues that arise under RLUIPA" and vice versa. *Redd v. Wright*, 597 F.3d 532, 535 n.2 (2d Cir. 2010). The Court will treat Plaintiff's Complaint as alleging Defendants have violated Plaintiff's religious rights under RLUIPA.

[3]The facts included in this Background section are taken directly from Plaintiff's Complaint. In some portions of the Complaint, Plaintiff seems to attempt to bring claims on behalf of other detainees. However, he lacks standing to bring other detainees' claims. *See Hummer v. Dalton*, 657 F.2d 621, 625–26 (4th Cir. 1981) (holding a prisoner cannot act as a "knight-errant" for others).

[4]Plaintiff has since moved to the Florence County Detention Center. [*See* Doc. 21 (notice of change of address).]

of his Kufi, a religious head piece, and asked Defendant Lt. Jerald Irving ("Irving") about Islamic prayer rugs but was told to make prayer on the same blanket he uses to sleep. [*Id.* at 3 ¶ 2.] WCDC does not sell Qur'ans in the kiosk, although it is stated that the kiosk sells them. [*Id.*] Plaintiff was told "to do without" a Qur'an. [*Id.*] Plaintiff has heard prison officers make derogatory remarks about Muslims. [*Id.* at 3 ¶ 3.] Plaintiff alleges he submitted grievance forms to Defendants Director Nadia Pressley ("Pressley") and Captain Jackie Scott ("Scott"), members of WCDC's administrative staff, but never received a response. [*Id.* at 4.] He also complained to Irving and Defendant Lt. Nick Murray ("Murray") but was brushed aside. [*Id.*] Plaintiff wishes to have a chapel/Imam assigned to WCDC and seeks $3.5 million. [*Id.* at 5.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe her pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of

4

> constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

> admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

### Claims for Injunctive and/or Declaratory Relief are Moot

As an initial matter, because, as discussed above, Plaintiff is no longer incarcerated at WCDC, his claims for injunctive and/or declaratory relief are moot. *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his transfer from WCDC, *id.*, and as public officials, Defendants are subject to suit for

7

damages in their individual capacities[5] in a § 1983 lawsuit,[6] *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).

**Religious Claim**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. 1. "Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion."

---

[5]To the extent Plaintiff brings this suit against Defendants in their official capacities under § 1983, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

[6]RLUIPA does not authorize a private cause of action for money damages against prison personnel for actions taken in their official or individual capacities because the statute does not waive the state's sovereign immunity under the Eleventh Amendment. *Sossamon v. Tx.*, 563 U.S. 277, 288 (2011) (official capacity); *Madison v. Va.*, 474 F.3d 118, 133 (4th Cir. 2006) (same); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (individual capacity). Accordingly, Plaintiff's claim for money damages under RLUIPA should be dismissed. Moreover, as is the case for claims under § 1983, a claim for injunctive or declaratory relief under RLUIPA is moot once a prisoner is transferred to another facility. *See Rendleman*, 569 F.3d at 186. Because Plaintiff cannot recover monetary damages under RLUIPA and any request for declaratory and injunctive relief is moot, summary judgment should be granted on Plaintiff's RLUIPA claim.

*O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). Importantly, however, "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).

Plaintiff has failed to submit evidence sufficient to create a genuine issue of fact as to whether any named Defendant has violated his constitutional rights. Pressley has averred that Plaintiff was housed with the only other Muslim inmate so they could worship together; another inmate was a "trustee" and could travel to Plaintiff's cell for worship.[7] [Doc. 25-2 ¶ 4.] Although Plaintiff's Kufi was initially taken from him over concerns about his ability to hide weapons or contraband inside the headpiece, it was subsequently returned to him.[8] [*Id.* ¶ 6.] When he inquired about a prayer rug, Plaintiff was told to use his blanket, but Plaintiff was allowed to have a friend or family member bring a prayer rug to him.[9] [Doc. 25-3 ¶ 2.] When Plaintiff attempted to order a Qur'an, WCDC's vendor did not have any in stock; however, Plaintiff was told that a family member or religious leader could bring him a Qur'an.[10] [Docs. 25-2 ¶ 8; 25-3 ¶ 3.] As an attachment to his response

---

[7]Plaintiff argues there was not enough space in his cell for three men to perform prayers [Doc. 30]; however, Pressley has averred that when Plaintiff complained that there was not enough space, WCDC was on "lock down" so Plaintiff could not be offered another area [Doc. 25-2 ¶ 7].

[8]Pressley has averred that prison officials at WCDC had never dealt with this issue before; however, after consulting with the Florence County Detention Center, Plaintiff's Kufi was returned to him [Doc. 25-2 ¶ 6.]

[9]Plaintiff does not appear to contest that a friend or family member could have brought a prayer rug to Plaintiff.

[10]Plaintiff asserts that he was sent a Qur'an but it was hard back and not allowed. [Doc. 30 at 2, 3.] However, the Supreme Court has upheld prison regulations restricting

to Defendants' motion for summary judgment, Plaintiff submitted the same affidavits Defendants submitted with Plaintiff's handwritten allegations that these affidavits contain lies [Doc. 30], but Plaintiff has offered nothing more than his own conclusory allegations that the affidavits are not true, *see Ross*, 759 F.2d at 365 (stating that conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion). Plaintiff has failed to establish a genuine issue of material fact remains regarding whether he was allowed to practice his religion and receive religious materials. Moreover, Plaintiff has failed to establish that Defendants intentionally violated his constitutional rights. *See Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) (holding that only intentional conduct is actionable under the Free Exercise Clause). Therefore, Defendants' motion for summary judgment should be granted with respect to Plaintiff's religious claim under § 1983.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. [Doc. 25-1 at 10–11.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who

---

the possession of hardback books. *Bell v. Wolfish*, 441 U.S. 520, 550 (1979) ("We conclude that a prohibition against receipt of hardback books unless mailed directly from publishers, book clubs, or bookstores does not violate the First Amendment rights of . . . inmates. That limited restriction is a rational response by prison officials to an obvious security problem.").

violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis.

*See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

January 21, 2016
Greenville, South Carolina